IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MUKHTAR YAHIA NAJI AL WARAFI,** | ) ) ) ) |
| *Petitioner*, | ) ) |
| v. | ) Civil Action No. 09-2368 (RCL) |
| **BARACK H. OBAMA**, *et al.*, | ) ) ) |
| *Respondents*. | ) ) |

**MOTION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS**

Under the Authorization for Use of Military Force, Pub. L. No. 107-40, § 2(a), 115 Stat. 224 (2002) ("AUMF"), the Government cannot detain a person captured during a conflict once the conflict has ended. Mukhtar Al Warafi has been imprisoned at Guantanamo for more than 13 years, based solely on a claim that he was "part of the Taliban" in 2001 during the United States' war in Afghanistan. President Obama has made it clear in authoritative statements, including in his State of the Union Address of January 20, 2015, that the United States' war in Afghanistan and its combat mission in Afghanistan ended at the close of 2014. There is thus no legal basis for Al Warafi's continued detention and the Court should forthwith grant his petition for a writ of habeas corpus.

**BACKGROUND FACTS**

1. **Al Warafi**

Al Warafi traveled to Afghanistan in August 2001 and, for a few months, worked there in clinics and a hospital. *Al Warafi v. Obama*, 704 F. Supp. 2d 32, 35-37 (D.D.C. 2010). On November 24, 2001, Al Warafi was captured by the Northern Alliance and was then transferred

to the custody of the United States. *Id.* at 37. He was taken to Guantanamo Bay in 2002, where he has been ever since. *Id.*

In 2004, Al Warafi filed a habeas corpus petition in this Court. The Government asserted that Al Warafi's detention was lawful under the AUMF because he had been "part of the Taliban" while in Afghanistan. *Al Warafi*, 704 F. Supp. 2d at 37-38 & 37 n.1. The Government stipulated that whether Al Warafi was "part of the Taliban" was the "sole issue" in the case. *Id.* Al Warafi denied any affiliation with the Taliban. In the alternative, he argued that even if he had been "part of the Taliban," he qualified as protected medical personnel under the First Geneva Convention. *Id.* at 35.

This Court denied Al Warafi's petition, concluding that he was, more likely than not, "part of the Taliban" when he was a medical worker in Afghanistan. *Id* at 44. This Court also held that Guantanamo detainees could not invoke the protections of the First Geneva Convention. *Id.* Al Warafi appealed. The D.C. Circuit agreed that Al Warafi "was more likely than not a part of the Taliban," but it remanded for a determination as to whether he qualified as protected medical personnel under the First Geneva Convention and Army Regulation 190-8. *Al Warafi v. Obama*, 409 Fed. App'x 360, 361 (D.C. Cir. Feb. 22, 2011). On remand, this Court ruled that Al Warafi did not qualify because he did not possess a medical armlet or identification card when captured. *Al Warafi v. Obama*, 821 F. Supp. 2d 47, 54-56 (D.D.C. 2011). The D.C. Circuit affirmed this ruling, 716 F.3d 627 (2013), and denied Al Warafi's petition for rehearing en banc. The Supreme Court denied Al Warafi's petition for a writ of certiorari. 134 S. Ct. 2134 (2014).

### 2. President Obama's Declarations Concerning the End of the United States' War In Afghanistan

On December 15, 2014, President Obama stated that "[t]his month, after more than 13 years, our combat mission in Afghanistan will be over," and "[t]his month, America's war in Afghanistan will come to a responsible end." Exhibit A, p. 2. Then, in the State of the Union Address on January 20, 2015, the President stated, without any qualifications or conditions, that "our combat mission in Afghanistan is over." Exhibit B, p. 1.

These pronouncements had been foreshadowed during the preceding two years by repeated presidential statements that the United States' war in Afghanistan would be ended, and its combat mission would be terminated, by the end of 2014. On February 12, 2013, President Obama declared in the State of the Union Address that "[b]y the end of [2014], our war in Afghanistan will be over." Exhibit C, p. 5. On May 23, 2013, he stated that "[t]he Afghan war is coming to an end." Exhibit D, p. 7. On November 25, 2013, he stated that '[t]he war in Afghanistan will end next year." Exhibit E, p. 1. On December 20, 2013, he stated that, "[b]y the end of next year, the war in Afghanistan will be over." Exhibit F, p. 2. In the State of the Union Address on January 28, 2014, he repeated that "we will complete our mission there [Afghanistan] by the end of this year, and America's longest war will finally be over." Exhibit G, p. 6. The President followed up with a prepared statement on May 27, 2014, that "this year, we will bring America's longest war to a responsible end," that "this is the year we will conclude our combat mission in Afghanistan," and that "America's combat mission [in Afghanistan] will be over by the end of this year." Exhibit H, p. 1. On December 28, 2014, the United States

marked the end of the war in Afghanistan with a ceremony in Kabul.[1]  Exhibit I.  On that date, President Obama released a statement that "the ceremony in Kabul marks a milestone for our country" because "our combat mission in Afghanistan is ending, and the longest war in American history is coming to a responsible conclusion."  *Id*.

## ARGUMENT

The Government's authority under the AUMF to detain prisoners terminates once the conflict in which they were captured has come to an end.  As Justice O'Connor stated in respect to Guantanamo detainees, it "is a clearly established principle of the law of war that detention may last no longer than active hostilities."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 520 (2004) (plurality opinion), citing the requirement of Article 118 of the Third Geneva Convention that prisoners "shall be released and repatriated without delay after the cessation of active hostilities."  6 U.S.T. 3316, 3406, T.I.A.S. No. 3364.[2]  *See also* National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, §§ 1021(a), (c)(1), 125 Stat. 1298 (2011) (stating that the AUMF authorizes the United States Armed Forces "to detain covered persons . . . pending disposition under the law of war," which includes "[d]etention under the law of war without trial until the end of the hostilities authorized by the [AUMF]").  As explained in *Hamdi*, detentions

---

[1]  After December 28, as explained by the President, the United States "will maintain a limited military presence in Afghanistan to train, advise, and assist Afghan forces and to conduct counterterrorism operations against the remnants of al Qaeda."  Exhibit I.

[2]  The Government has conceded that the AUMF is "informed by the laws of war," which include the Geneva Conventions.  *See, e.g.,* Brief of Respondents-Appellees at 24-25, *Al Warafi v. Obama*, No. 11-5276 (D.C. Cir. Feb. 12, 2012).

"are part of the exercise of 'necessary and appropriate force'" under the AUMF so long as the United States is "involved in active combat in Afghanistan." 542 U.S. at 521.[3]

The D.C. Circuit has likewise recognized in Guantanamo cases that prisoners not charged with a crime must be released when combat ceases. "Detention under the AUMF may last for the duration of hostilities," but "military detention—unlike a criminal or military commission sentence—comes to an end with the end of hostilities." *Ali v. Obama*, 736 F.3d 542, 544, 552 (D.C. Cir. 2013), *cert. denied*, 135 S. Ct. 118 (2014). The Court noted that the "purpose of military detention is to detain enemy combatants for the duration of hostilities so as to keep them off the battlefield," and that "*military detention ends with the end of the war.*" *Id.* at 545 (emphasis added). *See also Awad v. Obama*, 608 F.3d 1, 11 (D.C. Cir. 2010) (the authority to detain an enemy combatant is dependent "upon the continuation of hostilities"); *Hamdan v. United States*, 696 F.3d 1238, 1240 (D.C. Cir. 2012), overruled on other grounds by *Al Bahlul v. United States*, 767 F.3d 1 (D.C. Cir. 2014) ("In war, when the United States captures or takes custody of alien enemy combatants or their substantial supporters, it may detain them for the duration of hostilities."); *Abdullah v. Obama*, 753 F.3d 193, 199 (D.C. Cir. 2014) ("the AUMF permits the President to detain enemy combatants 'for the duration of the particular conflict in which they were captured,'" quoting *Hamdi*, 542 U.S. at 518).

The D.C. Circuit has also stated that the "determination of when hostilities have ceased is a political decision, and we defer to the Executive's opinion on the matter, at least in the absence of an authoritative congressional declaration purporting to terminate the war." *Al-Bihani v.*

---

[3] Army Regulation 190-8, § 3-13, similarly provides that prisoners "will be repatriated or released at the cessation of hostilities as directed by OSD [Office of Secretary of Defense]." This regulation is enforceable in habeas proceedings by Guantanamo detainees. *Al Warafi v. Obama*, 716 F.3d at 629.

*Obama*, 590 F.3d 866, 874 (D.C. Cir. 2010). "Whether an armed conflict has ended is a question left exclusively to the political branches." *Al Maqaleh v. Hagel*, 738 F.3d 312, 330 (D.C. Cir. 2013), *cert. dismissed* sub nom. *Al-Maqaleh v. Hagel*, 135 S. Ct. 782 (2014). Under these precedents, a conflict is over when the President says it is over.[4]

The Government has defended the legality of Al Warafi's detention solely on the allegation that he was "part of the Taliban" when he was in Afghanistan in 2001. *Al Warafi*, 704 F. Supp. 2d at 37 n.1. President Obama has stated, in unqualified terms, that the United States war and its combat mission in Afghanistan have ended. Under D.C. Circuit precedent, this declaration is a conclusive, unreviewable determination of the end of combat for purposes of detaining prisoners captured in the war in Afghanistan against the Taliban. There is, therefore, no legal basis for the continuing detention of Al Warafi.

---

[4] A different question would be presented if a habeas petitioner claimed that the relevant conflict had ended but the President disagreed. In such a case, petitioner submits that the President's position would not be conclusive or unreviewable in a habeas action.

**CONCLUSION**

For the reasons stated above, the Court should grant Al Warafi's petition for a writ of habeas corpus.

Respectfully submitted,


/s/ *Brian E. Foster*
S. William Livingston
D.C. Bar No. 59055
Brian E. Foster
D.C. Bar. No. 988311
Emily Keatley
D.C. Bar No. 1004811
Covington & Burling LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001-4956
(202) 662-6000 (phone)
(202) 662-6291 (fax)
wlivingston@cov.com
bfoster@cov.com
ekeatley@cov.com


David H. Remes
D.C. Bar. No. 370372
APPEAL FOR JUSTICE
1106 Noyes Drive
Silver Spring, MD 20910
(202) 669-6508 (phone)
remesdh@gmail.com

*Counsel for Petitioner*
*Mukhtar Yahia Naji Al Warafi*

February 26, 2015