**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

—————————————————————————
                                )

**MUKHTAR YAHIA NAJI**        )
**AL WARAFI,**                  )
                                )

      *Petitioner*,          )
                                )

      *v.*                     )     **Civil Action No. 09-2368 (RCL)**
                                )

**BARACK H. OBAMA**, *et al.*,  )
                                )

      *Respondents*.      )
—————————————————————————)

### REPLY TO GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS

The Government's argument for the continued detention of Al Warafi, a man found to have served briefly as a Taliban medic in 2001, is that "active hostilities" are continuing against the Taliban in Afghanistan, and that the President and the Congress are "in agreement" that this is the case. This argument is directly and fatally at odds with authoritative statements by the President that require the release of Al Warafi.[1]

The Government does not dispute that the President has the power to say when a war is over for purposes of determining when war-time detainees must be released. It is also indisputable that the President has reiterated, as recently as January 28, 2015, that "our combat mission in Afghanistan is over, and America's longest war has come to a responsible and honorable end." Exhibit J at 1. The Congress has not disagreed with the President's statements. The President's statements are not ambiguous, qualified, or conditional, and their plain English

---

[1]     This Reply responds to the unclassified version of the Government's Opposition, filed on April 24, 2015. (Doc. 84-1). Petitioner has also filed, under seal, a supplement to this Reply to respond to the partly-classified declaration of Rear Admiral Sinclair Harris, Exhibit 10 to the Government's Opposition.

meaning is that United States' military forces are no longer engaged in active hostilities with the Taliban.  The President's statements have not been amended or withdrawn by the only official with the power to do so, the President himself.  They are thus controlling here.

The President acknowledged when he made his end-of-war statements that "Afghanistan remains a dangerous place," and that the relatively few United States personnel still in that country "face risks" as they pursue their missions of "train[ing], advis[ing] and assist[ing] Afghan forces" and of conducting "counterterrorism operations against the remnants of al Qaeda."  *See* Exhibit I.  These missions, however, are not said by the President to be directed at the Taliban.  Al Warafi has been held as a Taliban war prisoner.  That war is over.  Accordingly, his continued detention is unlawful, and the Court should grant his habeas petition.[2]

## ARGUMENT

The Government does not dispute that Al Warafi, an alleged Taliban member, can only be held so long as "active hostilities" between the United States and the Taliban are ongoing. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 520 (2004) (plurality opinion) (it "is a clearly established principle of the law of war that detention may last no longer than active hostilities," citing Third Geneva Convention Art. 118, which states that prisoners "shall be released and repatriated

---

[2]     The Government argues in a footnote that Petitioner "has not stated an appropriate legal basis for his request that the Court reconsider his habeas petition on a new legal theory" because he failed to file either a motion pursuant to Fed. R. Civ. P. 60(b) or a new habeas petition.  Opp. 18 n.5.  The Government fails to point to any fact or legal argument that would be present in a Rule 60(b) motion or habeas petition that is not present in this motion.  Further, "'prolific case law across the circuits maintains that a title given to a motion . . . does not control its meaning.'" *United States v. Philip Morris USA Inc.* 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (quoting *United States v. Hart*, 933 F.2d 80, 84 (1st Cir. 1991)).  Petitioner's motion stated an appropriate legal basis to justify relief—President Obama has now declared that the United States' war in Afghanistan and its combat mission in Afghanistan ended at the close of 2014, and there is thus no legal basis for Petitioner's continued detention (even assuming arguendo that there ever had been such a basis).  If the Court deems it necessary, it could treat Petitioner's motion as either a Rule 60(b) motion or a new habeas petition.

without delay after the cessation of active hostilities").  The Government agrees, moreover, that the D.C. Circuit has held that for purposes of military detention authority, "active hostilities" are over when a president declares them to be over.  *See* Opp. 23–24 (quoting *Al-Bihani v. Obama*, 590 F.3d 866, 874 (D.C. Cir. 2010) ("The determination of when hostilities have ceased is a political decision, and we defer to the Executive's opinion on the matter, at least in the absence of an authoritative congressional declaration purporting to terminate the war.")

The principal question currently before this Court is whether the President's statements that America's war and its combat mission have ended in Afghanistan (the country that had been the central locus of the war against the Taliban) constitute his acknowledgement that active hostilities between the United States and the Taliban have ceased.  The answer to that question is a definitive "yes."

I.      **The President Has Authoritatively Declared that Active Hostilities Between the United States and the Taliban Have Ceased.**

On December 15, 2014, President Obama announced that "our combat mission in Afghanistan will be over" by the end of 2014, and America's "war in Afghanistan will come to a responsible end."  Exhibit A at 2.  On January 28, 2015, President Obama confirmed that "our combat mission in Afghanistan is over and America's longest war has come to a responsible and honorable end."  Exhibit J at 1.  *See also* Gov't Exhibits 3, 6, 9 (statements by the President concerning the end of the Afghanistan war).  The Government does not deny that the President made these statements, and it does not assert that they were casual, ill-considered remarks, or that they represented anything other than a plain expression of presidential policy upon which the world, including this Court, is entitled to rely.

Nevertheless, the Government argues that while the President has declared that the "war" and "combat mission" in Afghanistan are over, the President has not declared that "active

hostilities" have ceased there.  Opp. 22 ("[T]he end to the U.S. combat mission does not mean the cessation of active hostilities"); *see also id*. at 30.  This attempted hair-splitting, which would sap any substance from the President's oft-repeated statements, is unavailing.

In the first place, courts have used the phrases "war," "combat operation," and "active hostilities" interchangeably.  *See Hamdi*, 542 U.S. at 520–21 (equating "[a]ctive combat operations," "active combat," and "armed conflict," with "active hostilities"); *Baker v. Carr*, 369 U.S. 186, 213 (1962) (equating "duration of hostilities" with "war"); *Ludecke v. Watkins*, 335 U.S. 160, 167–68 (1948) (equating "actual hostilities" with "state of war"); *Maqaleh v. Hagel*, 738 F.3d 312, 329–30 (D.C. Cir. 2013) (equating "active hostilities" with "war" and "armed conflict").  This is not surprising, given that the plain meaning of the term "hostilities" refers either to fighting that takes place in a "war" or the "war" itself.  *See, e.g.*, Merriam-Webster's Dictionary, *available at http://www.merriam-webster.com/dictionary/hostilities* (defining hostilities as (a) "acts of fighting in a war," (b) "overt acts of warfare," or (c) "war"); Black's Law Dictionary 855 (10th Ed. 2014) (defining "hostilities" as "acts of war"); Webster's II New College Dictionary 547 (3d Ed. 2005) (defining "hostilities" as "open warfare"); Random House Webster's Unabridged Dictionary 925 (2nd Ed. 2001) (defining "hostilities" as "acts of warfare" or "war").  The Government's distinction between "war" and "combat mission," on the one hand, and "active hostilities," on the other, is spurious.

Second, the assertions that the President really meant to say only that a "particular combat mission" had ended (Opp. 20), or that he was just signaling a reduction in the "scope" of military operations (Opp. 22), or "a transition in United States military operations" (Opp. 2), simply cannot be harmonized with his unambiguous statements that the Afghanistan combat mission has ended and the Afghanistan war is over.  *See, e.g.*, Exhibit J at 1.  At no point has the

President suggested that the United States is still at war with the Taliban in Afghanistan, which is the only war of any conceivable relevance to the detention of Al Warafi.  Rather, he has repeatedly stated that the United States' role in Afghanistan has been reduced to a "limited military presence" (Exhibit I), and that its mission now is to conduct counter-terrorism operations against the "remnants of al Qaeda" and to help train and assist the Afghan security forces.  Gov't Exhibits 3 at 1–2, 6, 9.  The "full responsibility for securing the Afghan people" from the Taliban has been transferred to the Afghan security forces.  Gov't Exhibit 14 at 2; *see also* Gov't Exhibit 28 at 5–6.  As the President stated, "this is how wars end in the 21st century," not "through signing ceremonies" but by transferring "full responsibility" to the security forces of the country in question.  Gov't Exhibit 6 at 2.  The United States' war against the Taliban therefore ended when the President said it ended, at the close of 2014.

The Government also argues that Congress is "in agreement" that hostilities continue in Afghanistan.  Opp. 26.  Congress in fact has agreed to nothing of the sort.  Congress has made no statement of any kind concerning the end of hostilities in Afghanistan.  There surely has been no "authoritative congressional declaration" on the end of the war in Afghanistan, and in the absence of such a declaration, this Court is bound to "defer to the Executive's opinion on the matter."  *Al-Bihani*, 590 F.3d at 874.

The Government asserts that President Obama's acknowledgement that "Afghanistan is still a dangerous place" shows that he did not mean that "active hostilities" have ended.  Opp. 27–28.  This is a desperate argument.  Many places in the world are dangerous for Americans or American troops, but the United States is not engaged in "active hostilities" (for purposes of military detention authority) in every such place.  The President's statements about the danger in Afghanistan, and the risks faced by United States personnel, do not undercut his

contemporaneous statement that the war and the combat mission are over, and do not remotely suggest that he has directed the military to pursue active hostilities against the Taliban.

The Government suggests that detention is justified in order to prevent released prisoners from "refresh[ing] the ranks" of the Taliban.  Opp. 21.  This is an impossibility in Al Warafi's case.  Al Warafi is not an Afghan and has no current connection with the Taliban or Afghanistan.  The Government controls where he will be sent when he leaves Guantanamo, and it is inconceivable that he will be sent to Afghanistan.

The Government also asserts that the President's authorization of certain "military operations" and his continued deployment of military personnel in Afghanistan demonstrate that he has not taken the position that "active hostilities" have ceased there.  Opp. 31.  As the President has explained, however, American troops maintain a presence in Afghanistan in pursuit of "two narrow missions," which are "training Afghan forces and supporting counterterrorism operations against the remnants of al Qaeda."  Gov't Exhibit 6 at 2.  Neither of these "narrow" missions include active hostilities between the United States and the Taliban, and thus have no relevance to Al Warafi's detention.

The scope of these missions is clearly delineated in the Bilateral Security Agreement between the United States and Afghanistan.  *See* Gov't Exhibit 8 at 5–6.  This agreement authorizes the United States to "undertake supporting activities" such as "advising  [and] training . . . [Afghan National Defense and Security Forces]" as well as conducting counter-terrorism operations against al-Qaeda.  *Id.*  The agreement makes clear, however, that "[u]nless otherwise mutually agreed, United States forces shall not conduct combat operations in Afghanistan."  *Id.*  Violence against the Taliban is authorized only as a means of "force protection" or "self-defense."  *See id.* at 7, 11.  It is impossible to see how this reservation of the

right of self-defense constitutes any justification for the continued detention of Al Warafi.  Any

American actions taken in self-defense against sporadic attacks by the Taliban are not the

exercise of "active hostilities" by the United States.[3]  As for counter-terrorism operations, even if

this Court were to construe them as "active hostilities" for purposes of military detention

authority, the President has emphasized that these operations are directed at "the remnants of al

Qaeda," not the Taliban.  *See* Exhibit I.

## II.     Statements from Government Lawyers and High Ranking Officials Do Not Negate the President's Determination that the War Against the Taliban Is Over.

The Government argues that statements made by various people within the Executive

Branch establish that the President's position is that active hostilities with the Taliban have not

ceased.  The argument is meritless.

As a preliminary matter, most of these statements do not say that "active hostilities"

between the United States and the Taliban are ongoing.  For instance, the Government cites a

response of Brian McKeon, Principal Deputy Under Secretary of Defense for Policy, during a

Congressional committee hearing, but he said only that "[w]e're not at the end of hostilities in

Afghanistan."  Gov't Exhibit 31 at 24, cited at Opp. 26–27.  There are, of course, hostilities

ongoing in Afghanistan involving Afghan security forces, but McKeon did not say that the

United States is engaged in active hostilities against the Taliban.  A United States/Taliban war is

the only war of any possible relevance to Al Warafi, who was found only to be "part of" the

Taliban, not of al Qaeda or any other force.

---

[3]     Similarly, the fact that Taliban spokesmen make threats to harm U.S. personnel (*see* Opp. 23) does not change United States war policies.  These policies are set by the President, not by the Taliban.

The Government similarly refers to the statement of General John. F. Campbell, the commander of the remaining United States forces in Afghanistan, that "Taliban threats from indirect fire, insider attacks, and complex attacks" may occur "in the next fighting season." Gov't Exhibit 14 at 14, cited at Opp. 16.  General Campbell, however, was referring to threats to the Afghan security forces, not to American troops.  *See* Gov't Exhibit 14 at 14 ("[T]he Taliban will likely test the [Afghan security forces] aggressively in 2015 as they did in 2014.  Taliban threats from indirect fire, insider attacks, and complex attacks are projected to increase in the next fighting season.").  In the same statement, he explained that the Taliban "are fighting against and killing almost exclusively their fellow Afghans."  *Id*.  Hostilities between the Taliban and the Afghan security forces have no bearing on the existence of active hostilities involving the United States.

The Government only identifies one public statement by a Government employee that there are ongoing hostilities between the Taliban and the United States: a speech by the General Counsel of the Department of Defense on April 10, 2015, *i.e.,* after Al Warafi filed his motion.[4] Gov't Exhibit 36, cited at Opp. 29.  The General Counsel argues that the United States is still in an "armed conflict" with the Taliban.  Gov't Exhibit 36, at 8.  The self-serving arguments of a Government lawyer made after Al Warafi's motion had been filed have, however, no more

---

[4]     The Government argues that Secretary of State Kerry "reaffirmed that counter-terrorism operations will continue against both al-Qaeda and Taliban forces," citing a press conference of March 23, 2015.  Opp. 28, citing Gov't Exhibit 35 at 5.  This is not an accurate summary of Secretary Kerry's statement.  When asked whether the Taliban is currently an enemy of the United States, Kerry responded that he hoped the Taliban would participate in the peaceful governance of Afghanistan, "[b]ut if they don't, we will continue to defend our interests with respect to counterterrorism and to assist the people of Afghanistan."  Gov't Exhibit 35 at 6.  He did not say that there were any ongoing hostilities between the United States and the Taliban.

evidentiary value than would arguments by the Government lawyers in this case.  They should be disregarded.

**III.     The Government's Remaining Arguments Are Not Persuasive.**

The Government characterizes Al Warafi's argument as being that the AUMF has "lapsed" and "somehow silently expired."  Opp. 32 n.13.  This is not Al Warafi's argument.  The AUMF authorizes detention of an individual only so long as the conflict in which that individual was captured is ongoing.  *See Hamdi*, 542 U.S. at 521.  The conflict in which Al Warafi was captured—the conflict between the United States and the Taliban—is over.  Al Warafi's detention is thus improper under the AUMF.  Al Warafi does not argue that the entire statute has "expired" such that it no longer has any valid application in any other context.

The Government also argues that a ruling in Al Warafi's favor could raise separation-of-powers problems and could result in "embarrassment" to the United States.  Opp. 33.  The only embarrassment that might occur is not attributable to the President, whose statements are clear, but rather to the Government's own brief, which contorts the President's statements in an attempt to manufacture a distinction between "war" or "combat mission" and "active hostilities."  There are also no separation-of-powers concerns.  The Government asserts that the determination of when a conflict has ended "uniquely demand[s] [a] single-voiced statement of the Government's views."  Opp. 33 (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)).  Here, that "single-voiced statement" has been made by the only person who can speak for the entire Executive Branch: the President of the United States.  The President has stated that the Afghanistan war in which Al Warafi was captured is over.  This Court should take the President at his word.

## CONCLUSION

For the reasons stated above and in Al Warafi's motion, the Court should grant his

petition for a writ of habeas corpus.  After more than thirteen years of detention, Al Warafi

should be set free.

Respectfully submitted,


/s/ *Brian E. Foster*
S. William Livingston
D.C. Bar No. 59055
Brian E. Foster
D.C. Bar. No. 988311
Emily Keatley
D.C. Bar No. 1004811
Covington & Burling LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001-4956
(202) 662-6000 (phone)
(202) 662-6291 (fax)
wlivingston@cov.com
bfoster@cov.com
ekeatley@cov.com


David H. Remes
D.C. Bar. No. 370372
APPEAL FOR JUSTICE
1106 Noyes Drive
Silver Spring, MD 20910
(202) 669-6508 (phone)
remesdh@gmail.com

*Counsel for Petitioner*
*Mukhtar Yahia Naji Al Warafi*

May 20, 2015